UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MARK W. CUTLER,

               Plaintiff,

    v.

WARDEN LYNN GUYER, DEPUTY
WARDEN MARTIN, SGT.
HASENOEHRL, COL. JEANBLANC,
COL. OLSON,

               Defendants.

Case No. 3:08-CV-371-BLW

**MEMORANDUM DECISION
AND ORDER**

Pending before the Court in this action brought under 42 U.S.C. § 1983 by

Plaintiff Mark Cutler (Plaintiff) is Defendants' Motion for Summary Judgment. (Dkt. 26.)

The Court earlier provided Plaintiff with an extended period of time to file any

supplemental response to the Motion. (Dkt. 39.) None was filed. The Court withdraws the

reference to a United States Magistrate Judge in this matter to streamline adjudication of

this case. (Dkt. 6.)

Having fully reviewed the record, the Court finds that the parties have adequately

presented the facts and legal arguments in the briefs and record and that the decisional

process would not be significantly aided by oral argument. Therefore, the Court shall

decide this matter on the written motions, briefs, and record without oral argument. D.

**MEMORANDUM DECISION AND ORDER - 1**

Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**1. Background**

Plaintiff was permitted to proceed on the following claims in this action arising from his incarceration at the Idaho Correctional Center-Orofino (ICI-O): (1) an Eighth Amendment failure-to-protect claim against Defendants Martin and Olson (Olesen) for damages and against Defendant Guyer for injunctive relief only; and (2) a Fourteenth Amendment due process claim regarding a disciplinary action taken by Defendants JeanBlanc, Hasenoehrl, and Guyer. (Initial Review Order, Dkt. 6.)

In their Motion for Summary Judgment, Defendants argue that Plaintiff's claims should be dismissed with prejudice because Plaintiff has not shown that his constitutional rights were violated by Defendants. Alternatively, they argue that the claims are barred by the doctrines of res judicata and collateral estoppel because Plaintiff previously pursued a similar state court habeas corpus action.

**2. Standard of Law for Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural

**MEMORANDUM DECISION AND ORDER - 2**

shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id*. at 248.

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record which demonstrate that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv., Inc*., 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv*., 809

F.2d at 630-31 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

### 3. Failure to Protect Claim

On July 11, 2008, Plaintiff, an inmate in custody of the Idaho Department of Correction (IDOC), filed a state habeas corpus action in the Second Judicial District Court in Clearwater County, Idaho. On August 22, 2008, he filed an amended petition for writ of habeas corpus in that action. He alleged that four Defendants–Guyer, Martin, Hasenoehrl, and JeanBlanc–violated his Eighth and Fourteenth Amendment rights (1) by failing to protect him from an assault by Inmates Lopez, Warren, and Landell; (2) for issuing Plaintiff a Disciplinary Offense Report (DOR) for battery for the same incident, even though he was allegedly assaulted by the three inmates; and (3) for finding him guilty and affirming appeal of the DOR. (Kraft Affidavit, Exhibit I, Amended Petition, Dkt. 26-3, pp. 13-26.)

On September 2, 2008, while his state habeas corpus matter was pending, Plaintiff filed this civil rights action in federal court. Plaintiff's state habeas corpus action was dismissed by the state district court on December 31, 2008. (*Id*., Exhibit M, Dkt. 26-3, pp.

32-48.) Plaintiff filed a notice of appeal, and then a voluntary notice dismissing the appeal in the state action, (*id.*, Exhibits N & O, p. 49), and instead pursued this federal civil rights action.

Plaintiff's allegations relating to Defendants Guyer, Martin, Hasenoehrl, and JeanBlanc are the same in both the state action and this action, and are as follows. On May 10, 2008, at ICI-O, Plaintiff addressed to D/W Miller, and gave to C/O Cooper, an Offender Concern Form (OCF) stating that Plaintiff's cellmate (Lopez) made him nervous with his "gangbanger atttitudes." The OCF also stated that Idaho Maximum Security Institution ("IMSI"–his prior housing facility) refused to place him in protective custody, and that "you people are putting me in physical danger and the mental effect of having to worry 24 hours a day." (*Id.*, Exhibit A, Dtk. 26-3, p. 5.) There was no written response to the OCF.

Plaintiff alleges that on May 22, 2008, he was met at his cell by his cellmate Lopez and two other inmates, Warren and Landell. Warren told Plaintiff to come to Warren's cell. Plaintiff declined. Lopez said Plaintiff had to either go to Warren's cell or fight all three inmates in Plaintiff's cell. Plaintiff walked to Warren's cell, where Warren attacked him. Plaintiff fought back to defend himself.

Here, Plaintiff sues Defendants Martin and Olesen in their personal capacities for failure to protect him under the Eighth Amendment. To prevail on a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law.

**MEMORANDUM DECISION AND ORDER - 5**

*Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), the court outlined the requirements for a finding of proximate causation:

> Liability under section 1983 arises only upon a showing of personal participation by the defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983.

*Id*. at 1045.

To prevail on an Eighth Amendment "prison conditions" claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This is the "objective" element of the test. *Id*. at 829.

In addition, the inmate must show that prison officials were deliberately indifferent to a substantial risk of serious harm, which is the "subjective" element of the test. *Id.* at 828. Deliberate indifference exists when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Id.* at 838.

The United States Court of Appeals for the Ninth Circuit has explained that a showing that a prison official had a "sufficiently culpable state of mind" under *Farmer* "entails something more than mere negligence ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will

result." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2006) (citing *Farmer*, 511 U.S. at 835). In *Hearns*, where a "series of planned attacks and religious-related violence" by the ruling Muslim group against other Muslims at the prison was "'longstanding, pervasive, [and] well-documented,'" the court held that the allegations in the complaint "were sufficient to raise an inference that the prison officials acted with deliberate indifference, or knew that Hearns faced a substantial risk of serious harm and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Hearns*, 413 F.3d at 1041 (quoting *Farmer*, 511 U.S. at 847). *Hearns* is instructive, but not procedurally on point because the issue there was whether the allegations of the complaint failed to state a claim, and, here, the issue is whether Plaintiff has sufficient admissible evidence to rebut Defendant's argument that no facts showing deliberate indifference exist.

In *Berg v. Kincheloe*, 794 F.2d 457 (9th Cir. 1986), the Court explained the subjective element of the test:

> The standard does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur.

*Id*. at 459 (internal punctuation and citation omitted); *see also Glenn v. Berndt*, 289 F.Supp. 2d 1120 (D.C. Cal. 2003).

**A. *Defendant Martin***

As to the objective element of the Eighth Amendment test, the record shows that

Plaintiff complained of nonspecific and specific potential threats against him at two facilities. In his written OCF, Plaintiff identified a specific inmate "with gangbanger attitudes" at his present facility (ICI-O), but not a specific threat. In his OCF, he also discussed that his prior facility (IMSI) had denied him protective custody, but he admits elsewhere that he refused to tell IMSI staff which inmates specifically might be a threat to him. In his OCF, he stated vaguely that he thought he was in danger of physical harm and that he worried constantly. He, in fact, was severely beaten less than two weeks after filing his OCF, and the inmate he identified was involved in planning the attack. Construing the facts in a light most favorable to Plaintiff, the Court concludes that he has met the objective element of showing that he was incarcerated under conditions posing a substantial risk of serious harm.

Turning to the subjective element of the test, the Court finds no evidence in the record that Defendant Martin had any knowledge of a substantial risk of serious harm to Plaintiff prior to the assault. Defendant Martin declares that he did not see the OCF. (Todd Martin Affidavit, ¶ 2, Dkt. 26-4.) Plaintiff admits the OCF was not addressed to Martin, but to "Miller." Plaintiff alleges that he had previously requested and was denied protective custody while at the Idaho Maximum Security Institution (IMSI), but he provides no evidence showing that Defendant Martin, who was employed at ICI-O, had any notice of Plaintiff's previous requests for protective custody at a different institution.

Plaintiff alleges that prior to his placement at ICI-O, he requested protective custody at IMSI. A hearing was held on March 27, 2008, before Sergeant Sargent and an

**MEMORANDUM DECISION AND ORDER - 8**

IMSI case worker. They would not place him in protective custody because he would not name any inmates he feared. (Dkt. 32, p. 3.) No record was kept of this hearing.[1] The Affidavit of Inmate Michael Luma states that on March 24, 2008, Plaintiff had an IMSI hearing and was refused protective custody. (Dkt. 32-3, p. 13; Dkt. 26-3, p. 71.) For purposes of this Motion, the Court will assume that such a hearing or meeting was held.

There is no evidence in the record that Plaintiff's "C-file" (central file), which follows him from institution to institution, contained evidence that would have alerted Martin that placement of Plaintiff and Lopez together as cellmates created a substantial risk of serious harm. Plaintiff argues, "[t]he fact that Plaintiff requested PC, but there is no record of Plaintiff requesting protection shows . . . to what extent I.D.O.C. staff are willing to take in order to cover the egregious constitutional violations that have occurred against Plaintiff." (Dkt. 32-2, p. 4.)

The argument is unsupported by the evidence in the record. Plaintiff alleges that he refused to give IMSI staff the names of the persons allegedly threatening him. (Dkt. 32, p. 3.) Thus, the IMSI personnel did not have notice of a specific threat against Plaintiff such that protective custody would be warranted. The lack of a record alone is not sufficient evidence of a staff conspiracy. In any event, there is no evidence of an "egregious constitutional violation" in the record that would warrant the inference that a purposeful

---

[1] The IMSI protective custody request (prior to the assault at ICI-O) is not to be confused with Plaintiff's after-assault protective custody request at ICI-O, allegedly denied by Defendant Martin for Plaintiff's continued failure to identify any specific inmates as threats. (See Deposition of Plaintiff, Dkt, 26-3, pp. 68-69.) The after-assault protective custody request is not relevant here.

cover-up is the reason for lack of a record of the IMSI hearing.

Because Defendant Martin was unaware of Plaintiff's prior request for protective custody at IMSI and did not see Plaintiff's OCF, Defendant Martin is entitled to summary judgment for Plaintiff's failure to produce evidence showing a causal link between Martin and the assault.

## B. *Defendant Olesen (Olson)*

Plaintiff's amended state habeas petition of August 18, 2008, contained no allegations about Defendant Olesen (called "Olson" by Plaintiff). Later, in this federal action, Plaintiff made the same allegations against the other four Defendants, adding the new allegation that a few days after Plaintiff turned in the OCF, Officer Olesen came to Plaintiff's and Lopez' cell and said to Lopez, "Someone put a kite in on you. Just giving you a heads up." Plaintiff alleges that Inmate Lopez then said to Plaintiff after Olesen left, "See, I always find out when someone tells on me." (Am. Complaint, pp.4-5, Dkt. 1.)

Plaintiff's OCF was received by C/O Cooper (not a defendant) and addressed to D/W Miller (not the correct name of staff). No prison staff ever responded to the OCF in writing, and the chain of custody of the OCF after it was received by C/O Cooper is uncertain. Defendant Olesen denies that he saw the OCF or spoke to Inmate Lopez, but for purposes of the Motion for Summary Judgment, the Court the uses the factual allegations most favorable to Plaintiff–that Olesen spoke to Inmate Lopez about an OCF. Beyond, that, however, Plaintiff has produced no facts showing that Olesen actually saw Plaintiff's OCF, that Olesen was speaking to Lopez about Plaintiff's OCF instead of some

other OCF, or that Olesen subjectively believed that Plaintiff would be in danger if Olesen spoke to Lopez.

Plaintiff alleges that Olesen's actions have a causal link to the assault, because, although Lopez did not assault Plaintiff, Lopez incited the assault by Warren when Lopez invited Plaintiff to make a choice between going to Warren's cell or being beaten by all three inmates (including Lopez) if Plaintiff chose to remain in Plaintiff's/Lopez' cell. Lopez also apparently came to the aid of Warren during the fight between Warren and Plaintiff.

The Court concludes that Plaintiff has not produced sufficient evidence on the subjective element–to show that Olesen intended to harm Plaintiff or drew the inference that a substantial risk of serious harm would arise if Olesen told Lopez about the OCF.

Plaintiff has submitted the Affidavit of Inmate Scott Riggs, who states that Olesen placed Riggs in a similar situation in 2008. Riggs states that twice Olesen was orally informed by Riggs that Riggs thought he was in danger of being beaten by gang members. (Dkt. 32-3, pp. 24-25.) Olesen refused to do anything the first time, and the second time Olesen allegedly harassed, wrote up, and slandered Riggs. It is unclear from the Affidavit whether Riggs was harmed or merely threatened by other inmates in these incidents.

Riggs' Affidavit can be construed as evidence that Olesen generally disregarded inmate complaints about potential threats of violence from other inmates. However, without any facts about the specific information provided to Olesen by Riggs or

information about whether the threat to Riggs was serious, the Affidavit has little bearing on the question of deliberate indifference to a substantial risk of serious harm in this case.

Plaintiff has not shown that Olesen's treatment of *Riggs* is relevant to Olesen's treatment of *Plaintiff*, because, here, Plaintiff is alleging that the assault was caused by a conspiracy among prison officials to harm Plaintiff by allowing gang members to attack him. There is no allegation that such a conspiracy was also aimed at Riggs. It is on this point that Plaintiff's case breaks down–he has failed to bring forward sufficient evidence "on which the jury could reasonably find for [Plaintiff]" on a theory of conspiracy to supply the deliberate indifference element of his Eighth Amendment claim. *See Anderson v. Liberty Lobby*, 477 U.S. at 252.

Plaintiff has alleged that all Defendants acted as part of a large conspiracy arising from Plaintiff's claim that IDOC prison staff were angry with Plaintiff for exposing former Chaplain Mahaney's practice of charging inmates $100 for performing marriage ceremonies at Southern Idaho Correctional Institution (SICI) and for causing Mahaney to lose his job. Plaintiff reported to the United States Department of Justice: "I have been assaulted by three inmates because of staff 'getting even' with me for what I did to Chaplain Dan Mahaney. . . ." (Dkt. 32-10, p. 9.)

Defendants argue that Plaintiff has produced no admissible evidence of a conspiracy,[2] of Plaintiff's allegation that Mahaney was terminated instead of simply not

---

[2] In Plaintiff's prior habeas corpus action, the state court rejected Plaintiff's conspiracy allegations as "fanciful" and concluded that Plaintiff had no chance of prevailing at a hearing based on such a theory: "Petitioner's version of events identifying a Chaplain and IDOC staff as

reapplying for the job,[3] or that it is unlawful to charge a fee to perform a wedding.[4]

In rebuttal, Plaintiff has provided the Affidavit of Inmate Chad Tipton, which states that, on March 17, 2008, he was told that "Mahaney" was behind a "hit" placed on Plaintiff. (Dkt. 32-3, pp. 4-5; Dkt. 32-2, p. 3.) This statement is hearsay, because Tipton suggests that he heard this information from "other white boys [a prison gang]." The persons who told Tipton this information are not identified.

Inmate Evan Twiford provided an Affidavit stating that he heard a rumor that the White Boys had a hit out on Cutler. (Dkt. 32-3, pp. 7-8.) There is no source of the rumor and no link to Chaplain Mahaney in the Affidavit.

This Court does not rely on the state court's conclusion that Plaintiff's conspiracy

---

engaged in a conspiracy against him by inciting gang members to harm Petitioner is by any standard too extraordinary to accept. Petitioner's version is dependent upon a series of events which break down not only in terms of each event, but also how they are linked together." (Dkt. 26-3, pp. 42-44.) While the state court's opinion is not evidence in this case, the Court includes it because the record in this matter similarly shows a lack of evidence of conspiracy.

[3] See Letter of June 3, 2008, from Idaho Department of Correction:

> The Department can find no information to support your claims that you were associated with Chaplain Mahaney leaving the Department. The Department awarded the chaplain contract that was due for renewal to a new service provider. Chaplain Mahaney did not apply to the new service provider to continue his services at SICI.

(Dkt. 32-11, p. 7.)

[4] Idaho Code § 32-307 provides:

> The person solemnizing a marriage is for such service entitled to receive from the parties married the sum of five dollars ($5.00), but may receive any other or greater sum voluntarily given by the parties to such marriage.

theory is "fanciful," but notes that, after an independent review of the record in this matter, there is no admissible evidence of the existence of a complex conspiracy theory and no evidence of a causal link between Defendant Olesen and Chaplain Mahaney. There is no evidence in the record that Olesen knew that Lopez was such a threat to Plaintiff from Lopez's past history or for another reason that Olesen should have taken action to separate Plaintiff from Lopez immediately. Riggs' Affidavit provides insufficient evidence to create a genuine issue of material fact that Olesen actually drew an inference that Plaintiff was at substantial risk of being seriously harmed by Lopez and other inmates incited by Lopez.

Here, in the summary judgment context, Plaintiff must come forward with more than a scintilla of admissible evidence supporting his conspiracy theory (including a causal link) as the subjective basis for Defendant Olesen's alleged actions. The Court concludes that there is insufficient evidence on which the jury could reasonably find for Plaintiff. *Anderson v. Liberty Lobby*, 477 U.S. at 252. Accordingly, Defendant Olesen is entitled to summary judgment for Plaintiff's failure to show lack of subjective intent as an element of an Eighth Amendment claim.

### C. *Defendant Guyer*

The claim against Defendant Guyer is for injunctive relief only. The state district court noted that evidence in the habeas corpus record showed that Plaintiff refused a prison official's offer of a protective custody application on June 2, 2008, and he stated that he did not anticipate any more issues with the attackers. (Dkt. 26-3, pp. 39-40.) In

this lawsuit, Plaintiff asked to supplement his Complaint to include allegations that he was placed back on the same housing tier where he had been assaulted. However, the Court determined that this was a separate claim that was unexhausted, that Plaintiff had not alleged any actual harm, and that he could bring the claim in a new suit if he could cure the deficiencies.

In response to the Motion for Summary Judgment, Plaintiff did not bring forward any evidence to show that he has recently requested or has been refused placement in protective custody. Plaintiff is now housed at a different facility, Idaho State Correctional Institution (ISCI). For all of these reasons, Guyer (or Plaintiff's new warden) is entitled to summary judgment on Plaintiff's claim for injunctive relief on the failure-to-protect claim.

**4.** *Disciplinary Offense Report and Hearing*

Plaintiff's other remaining claim is that his Fourteenth Amendment due process rights were violated when Defendant JeanBlanc issued a Disciplinary Offense Report (DOR) for battery, Defendant Hasenoehrl found him guilty of the DOR, and Defendant Guyer affirmed the appeal in that action. The Court previously determined that Plaintiff did not allege that he suffered an atypical and significant hardship as a result of being found guilty of the DOR and thus could not proceed under a liberty interest due process theory. (Dkt. 6.) Therefore, he was permitted to proceed only on the theory that the guilty finding was arbitrary and capricious.

## A. *Defendant JeanBlanc*

Plaintiff alleges that because Lopez told Plaintiff to not reveal to prison officials that he was assaulted, Plaintiff lied to JeanBlanc about how Plaintiff had received his injuries. JeanBlanc then confronted Plaintiff, stating that if Plaintiff told JeanBlanc the truth, Plaintiff would not be charged with a DOR. After Plaintiff told the truth, JeanBlanc charged him with a DOR. It is clear that Plaintiff's admitted deception and JeanBlanc's alleged deception were related to prison security concerns. In any event, while being untruthful or deception is not appropriate and should not be condoned, it does not arise to the level of a constitutional violation. As explained below, the DOR itself was not based on arbitrary and capricious grounds, even if JeanBlanc was deceptive in coaxing Plaintiff to tell the truth about the underlying incident.

## B. *Defendants Hasenoehrl and Guyer*

A prisoner has the right to be free from punishment that is arbitrary and capricious. *See Burnsworth v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999) (due process was violated when a prison disciplinary hearing board convicted an inmate of escape after that board held a hearing at which no shred of evidence of the inmate's guilt was presented, even if inmate demonstrated no cognizable liberty interest).

"To establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (quotations omitted),

**MEMORANDUM DECISION AND ORDER - 16**

*overruled in part on other grounds as recognized by Nitco Holding Corp. v. Boujikian*,
491 F.3d 1086 (9th Cir. 2007). Due process requires only "some evidence" to support the
prison board's disciplinary decision. *Superintendent, Massachusetts Corr. Inst., Walpole
v. Hill*, 472 U.S. 445, 455 (1985). Under the "some evidence" standard, the Court does
not examine the entire record, independently assess witness credibility, or reweigh the
evidence; rather, the relevant question is whether there is any evidence in the record that
could support the conclusion. *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003).

Here, Plaintiff was afforded a hearing. At the hearing, he admitted that he chose to
enter Warren's cell, though he argued that his decision was made under coercion. The
videotape also showed Plaintiff entering Warren's cell. Plaintiff admits to fighting with
Warren, although Plaintiff characterizes the fighting as self-defense. Plaintiff's
admissions are enough to support a simple battery charge under the "some" evidence
standard. A DOR proceeding is not a criminal proceeding with a "beyond a reasonable
doubt" burden of proof. The finer point of whether a battery charge would be defeated by
the defense of self-defense in a criminal action is not relevant in the DOR setting, given
that some evidence of guilt was presented at the DOR hearing.

Rather, while Plaintiff has reasons supporting all of his actions, they are not
necessarily valid reasons when considering the overall security concerns of the institution.
In any event, the DOR hearing officer and reviewing authority clearly had "some"
evidence upon which to base their decision. It cannot be said that the decision was
"without a shred of evidence" or arbitrary and capricious, that is, having no substantial

relation to public health, safety, morals or general welfare.

Plaintiff has also alleged that the DOR hearing officer, Hasenoehrl, was not an "impartial tribunal" and that the appellate reviewing official, Guyer, was "biased." (Dkt. 32-1, p.2.) However, Plaintiff has not offered admissible evidence to support his allegation, other than his general theory that staff were engaged in a conspiracy against him as a result of Chaplain Mahaney. Plaintiff offers no causal link between Hasenoehrl and Mahaney or Guyer and Mahaney. Based on all of the foregoing, Defendants are entitled to summary judgment as a matter of law.

## 5. Res Judicata and Collateral Estoppel

Res judicata prevents parties from re-litigating causes of action which were finally decided in a previous suit. Res judicata is an affirmative defense which may be used in federal court to give preclusive effect to prior state court judgments. *See* 28 U.S.C. § 1738 (federal courts must afford full faith and credit to state judicial proceedings); *Allen v. McCurry*, 449 U.S. 90 (1980) (federal courts hearing § 1983 actions must give *collateral estoppel* preclusive effect to state court judgments); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984) (federal courts hearing § 1983 actions must give *res judicata* preclusive effect to state court judgments). To determine whether a state judgment should have preclusive effect in a federal action, federal courts apply the state's rules governing preclusion. *See Migra*, 465 U.S. at 83-85.

Idaho law provides that the party asserting res judicata as an affirmative defense bears the burden of establishing all of the essential elements thereof by a preponderance

of the evidence. *Foster v. City of St. Anthony*, 841 P.2d 413, 420 (Idaho 1992). "Under the principle of res judicata or claim preclusion, judgment on the merits in a prior proceeding generally bars relitigation between the same parties or their privies on the same cause of action." *D.A.R., Inc., v. Sheffer*, 997 P.2d 602, 605 (Idaho 2000) (citing *Yoakum v. Hartford Fire Ins.*, 923 P.2d 416 (Idaho 1996)).

A party seeking to apply collateral estoppel (or issue preclusion) must show the following: (1) the party against whom an earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation. *Ticor Title Co. v. Stanion,* 157 P.3d 613, 618 (2007).

Defendants seek to impose a res judicata or collateral estoppel effect from Plaintiff's prior state habeas corpus action in this federal civil rights action. The primary issue is that an Idaho habeas corpus action is a unique state law cause of action based upon the Idaho Constitution and Idaho statute. While a state habeas corpus action may involve federal constitutional issues, there is ordinarily no right to discovery, no availability of jury trial, and no availability of a remedy other than injunctive relief. *See* Idaho Code § 19-4209 & -4210. Here it appears that Plaintiff was not permitted discovery prior to having to respond to a summary judgment motion and that he did not have an

opportunity to bring a damages claim.[5] *Cf. Hawkins v. Risley*, 984 F.2d 321, 325 (9th Cir. 1993) (res judicata properly applied where "the state court allowed Hawkins to submit briefs, present evidence, and cross-examine the state's witnesses").

The standard of law used in state habeas corpus is distinctly different from a § 1983 action. This difference calls into question the party's ability to fully and fairly litigate a claim. In his state habeas corpus action, Plaintiff was required to meet the standard specified in Idaho Code § 19-4211,[6] which is akin to the standard for a preliminary injunction, and far from the preponderance of evidence standard in a civil rights action for damages. For example, in Plaintiff's particular case, the state district

---

[5] See www.idcourts.us/respository.

[6] Idaho Code § 19-411(2) provides:

    Any court authorized under section 19-4202, Idaho Code, may grant a writ of habeas corpus and order a hearing pursuant to a petition filed by a prisoner, or, pursuant to section 19-4207, Idaho Code, on behalf of a prisoner when:

(a) The court has considered the factual allegations contained in the petition together with any responsive pleading filed by the respondent, and a reply filed by the prisoner, if any;

(b) The court finds that the petitioner is likely to prevail on the merits of his state or federal constitutional challenge;

(c) The court finds that the petitioner will suffer irreparable injury if some relief is not granted;

(d) The court finds that the balance of potential harm to the petitioner substantially outweighs any legitimate governmental interest; and

(e) The court finds that equity favors granting relief to the petitioner.

court noted that he had to show irreparable harm in order to prevail. (Dkt. 26-3, p. 40.) The state court noted that a habeas corpus action is for the purpose of providing "a remedy to protect him from harm." (*Id.*, p. 41.)

Because of these significant differences between a state habeas corpus action and a federal civil rights action, the Court concludes that Plaintiff did not have an opportunity to fully and fairly litigate his constitutional claims and issues in state court and that the claims were not identical. As a result, that portion of Defendants' Motion for Summary Judgment is denied. However, because Plaintiff cannot prevail on the merits of his case, denial on the alternative grounds for the motion has no effect on the outcome of case.

**6. Conclusion**

All Defendants are entitled to summary judgment on Plaintiff's claims. Plaintiff's entire case will be dismissed with prejudice.

**ORDER**

**IT IS ORDERED:**

1.    Defendants' Motion for Summary Judgment (Dkt. 26) is GRANTED on the grounds set forth above.

2.    Plaintiff's entire case (including the Complaint at Dkt. 1) is DISMISSED with prejudice.



DATED:  **September 14, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge